Darren B. Neilson, USB #15005
**The Neilson Law Group**
2150 South 1300 East, Suite 360
Salt Lake City, UT 84106
Telephone:     801.207.9500
Facsimile:     801.212.2058
Email:         darren@neilsonlaw.co

*Attorneys for Debtor Fairgrounds Properties, Inc.*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re<br><br>FAIRGROUNDS PROPERTIES, INC.<br><br>    Debtor. | Bankruptcy No. 17-29271<br><br>Chapter 11<br><br>Judge William T. Thurman |

**MOTION SEEKING AUTHORITY TO SELL REAL PROPERTY (LOT 44) LOCATED IN HURRICANE, UTAH FREE AND CLEAR OF ALL INTERESTS PURSUANT TO 11 U.S.C. § 363, AND TO PAY TAXES AND COSTS OF SALE FROM SALE PROCEEDS**

Fairgrounds Properties, Inc., debtor and debtor-in-possession (the "**Debtor**" or **"Fairgrounds"**) in the above captioned Chapter 11 case, by and through is undersigned proposed counsel, moves this Court for an Order authorizing the private sale of real property (lot 44) located in Hurricane, Utah, which is described in further detail below, free and clear of all interests pursuant to 11 U.S.C. § 363(b), (f), and (m), as well as Rule 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure.  As part of this request, the Debtor requests that the Court authorize the Debtor to make certain payments associated with the sale as detailed below.

This Motion is supported by the *Declaration of Robert Stevens* (the "Stevens Declaration") attached hereto as **Exhibit 1**.  For the reasons set forth below, the Debtor maintains that this Motion should be granted.

## JURISDICTION AND VENUE

1. On or about October 25, 2017, the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code. ECF Docket No. 1.

2. The Court has subject matter jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

## BACKGROUND

4. In 2007, Debtor purchased eighty-six (86) acres of real property located in Hurricane, Utah (the "**Property**"). Stevens Declaration ¶ 4. The Debtor developed the Property into industrial lots and then sold them further construction and development by purchasers (the "**Fairgrounds Lots**"). *Id*. Though various sales over the years, as of the petition date, the Debtor is left with approximately thirty-one (31) acres, which have been divided up into nineteen (19) lots. *Id*. The Debtor has completed the entire infrastructure of remaining land including; completion of gutters, paved entries and water/sewer. *Id.*

5. Relevant to this Motion is lot 44 ("**Lot 44**") which is described as: "Lot Forty-Four (44) FAIRGROUNDS INDUSTRIAL PARK, according to the Official Pat thereof, on file in the Office of the Recorder of Washington County, State of Utah," as is more fully described in a Title Report attached as Exhibit "A" to the Stevens Declaration.

6. The following pre-petition liens exist against the Lot 44 (collectively, the "Recorded Liens"):

    a. Unpaid property taxes;

    b. Deed of Trust in favor of Town & Country Bank[1], recorded December 17, 2008, as entry number 20080048001;

---

[1] People's Intermountain Bank ("**PIB**"), a Utah corporation is the successor in interest by merger to Town & Country Bank, Inc.

        c.   Deed of Trust in favor of Dakota Aggregate LLC, recorded February 24, 2014, as entry number 20140005359.

Exhibit A to Stevens Declaration.

### *Marketing and Sale of the Property*

7.     Cushman & Wakefield ("C & W") has marketed the Property for private sale pursuant to a listing agreement from April 1, 2014. Stevens Declaration ¶ 5.

8.     C & W has actively marketed the Property, including Lot 44 for private sale pursuant to industry standards, including by: (a) creating marketing flyers and postcards; (b) HTML email broadcasts; (c) posting on national real estate websites; (d) launching campaigns to real estate brokers; (e) engaging the regional economic development community; (f) soliciting targeted category buyers; and (g) otherwise promoting the Property's availability to the national marketplace. Stevens Declaration at ¶ 6.

9.     Subject to Bankruptcy Court approval, on April 09, 2018, John Hasshaw or Assigns ("**Buyer**") presented an Real Estate Purchase Contract for Land ("Agreement") for the purchase of Lot 44 for a purchase price of $115,000. A true and correct copy of the Sale Agreement is attached as Exhibit "B" to the Stevens Declaration. On or about April 13, 2018, Debtor presented a counteroffer to Buyer in which Debtor offered Lot 44 for a purchase price of $125,000, as well as requesting forty-five (45) days for closing to allow the Debtor to obtain Bankruptcy court approval of the sale. *See* Exhibit B to Stevens Declaration.

### *The Sale Agreement*

10.    While the Sale Agreement must be reviewed to obtain full disclosure of all its material terms, the following summary of the terms most relevant to this Motion:

        a.   The purchase price if $125,000.

        b.   The Buyer has made an earnest money deposit in the amount of $5,000.

*Id*.

### *Additional Terms*

11.    Additional terms requested in this Motion are:

    a. The sale of Lot 44 is conditioned on the Court's entry of an Order approving the Sale.

    b. The Settlement and close of the transaction will occur once the Order is entered.

    c. The Debtor requests that the Court waive the fourteen (14) day appeal period.

    d. The sale of the Property is "AS IS" with no representation or warranties by the Debtor, except that the Debtor has authority to enter into the Sale Agreement and sell the Property with Court approval and will seek approval of the sale free and clear of liens and interests under 11 U.S.C. § 363(b) and (f).

    e. Authorize a break-up fee (the "**Break-Up Fee**") in favor of Buyer of $5,000.

*Break-up Fee*

12. In order to induce Buyer to expend additional time, resources, and uncertainty in submitting a "stalking horse" bid, the Debtor agreed to provide, and to seek this Court's approval of the Break-Up Fee. The Motion requests entry of an order approving the Break-Up Fee, which is comprised of a break-up fee of $5,000[2] if Lot 44 is sold to a party other than Buyer, provided that Buyer has not defaulted in any of its material obligations under the Sales Agreement.

*Proposed Sale Procedures*

13. The proposed sale of Lot 44 is a private sale, and it is anticipated that it will close in accordance with the terms of the Sale Agreement.

14. However, the sale of Lot 44 is subject to higher and/or better offers.

---

[2] As set forth in the Higher and/or Better Deadline, the first acceptable bid shall be in increments of $6,000 to ensure that the Debtor's Estate receives a benefit from back-up buyer.

15. The Debtor will consider all written offers for the purchase of Lot 44 made prior to the expiration of the deadline set forth in the Notice of Hearing filed concurrently herewith (the "**Higher and/or Better Deadline**").

16. Whether an offer is a higher and/or better offer will be determined by the Debtor is its sole discretion.

17. Upon closing of the sale, whether to the Buyer or to a person who has submitted a higher and/or better offer, the Debtor will file a Notice of Sale with the Court that provides information typically required under Federal Rule of Bankruptcy Procedure 6004(f).

18. In the event that a higher and/or better offer is received and accepted for the sale of Lot 44, approval of the sale to the Buyer herein will be deemed to be approval of the sale to the person submitting the higher and/or better offer, with the Notice of Sale providing an itemization of amounts obtained by the Debtor, as well as the Break-Up Fee to the Buyer.

*Proposed Disbursements and Treatment of Recorded Liens*

16. Following close of the sale of Lot 44, the Debtor anticipates paying from the gross proceeds of the sale the costs of sale, which will include a 6% commission as set forth in the Listing Agreement. Stevens Declaration ¶ 8.

17. <u>Unpaid Property Taxes:</u> The Debtor seeks permission to pay all unpaid property taxes from the sale proceeds as they are secured by Lot 44 pursuant to Utah law.

18. <u>Deed of Trust of PIB:</u> The Debtor seeks permission to pay PIB the remainder of the funds after paying costs and taxes.

19. <u>Deed with Assignment of Rents of Fairgrounds Industrial Park, LLC:</u> Fairgrounds Industrial Park, LLC has agreed to voluntarily release this deed against Lot 44, and it will remain of record against the rest of the Property with the same rights and priority, if any, as it had on the Petition Date.

20. <u>Deed of Trust of Dakota Aggregate LLC:</u> The Debtor seeks to sell Lot 44 free and clear of this lien as it is an avoidable transfer under 11 U.S.C. § 544 and the Uniform Fraudulent Transfer Act as adopted in Title 25 Chapter 6 of the Utah Code. Specifically, under Utah Code Ann. §§ 2-6-202(b) and 305(2) a transfer is avoidable if the debtor incurred the obligation without receiving reasonable equivalent value at a time when the Debtor was insolvent. Stevens Declaration ¶ 15. Furthermore, the transfer was made within four (4) years of the Petition Date. *Id*. Debtor was in a bankruptcy at the time of the transfer and did not receive reasonable equivalent value for the transfer as the obligation satisfied by allowing the transfer was an obligation of Brett John[3] personally and not that of the Debtor. *Id*.

*Notice*

21. Notice of this Motion will also be served on all parties in interest in this case.

**RELIEF REQUESTED**

22. By this Motion, the Debtor seeks the entry of an Order: (a) approving the Sale Agreement; (b) authorizing the sale of Lot 44 pursuant to the Sale Agreement and this Motion out of the ordinary course of business, free and clear of interests, and subject to higher and/or better offers, with valid liens, claims, encumbrances and interests in Lot 44 attaching to the net sale proceeds; (c) authorizing the payment of actual and necessary costs of sale, including a commission to C & W, and outstanding real property taxes; and (d) waiving of the fourteen (14) day appeal period.

23. The Debtor believes that the sale of Lot 44 as set forth in the Sale Agreement is fair, reasonable, and in the best interests of the Debtor and the estate.

24. The Debtor thus maintains that this Motion should be granted.

---

[3] Mr. John was once a principal of the Debtor prior to transferring his interest to Mr. Stevens.

## ARGUMENT

*The Proposed Sale Should Be Authorized Under 11 U.S.C. § 363(b)*

25. The Bankruptcy Code provides that the "trustee, after notice and a hearing, may use, sell, lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under 11 U.S.C. § 1107(a), a debtor-in-possession "shall have all the rights, …and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter."

26. In this case, the Debtor is a real estate developer, and so the Sale is not technically outside the Debtor's ordinary course of business. However, the Debtor believes it is prudent to file this Motion to give all parties notice, and to invoke the powers of 11 U.S.C. § 363(f).

27. In order to approve a sale of assets outside the ordinary course of business, the Debtor must show that:

    a. a sound business reason exists for the sale;

    b. there has been adequate and reasonable notice to interested parties, including full disclosure of the sale terms and the Debtor's relationship with the buyer;

    c. the sale price is fair and reasonable; and

    d. the proposed buyer is proceeding in good faith.

28. The Debtor has met all four parts of this test, and accordingly, respectfully requests that the Court grant this Motion.

*Sound Business Purpose*

29. Once a debtor articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action was in the best interests

of the company.' " *In re Johns-Manville Corp.*, 60 B.R. 612, 615-616 (Bankr. S.D.N.Y.) ("a presumption of reasonableness attaches to a Debtor's management decisions").

30. The Debtor is a real estate developer and Mr. Steven's has over thirty (30) years of experience and expertise in real estate sales. Stevens Declaration ¶ 11.

31. In the Debtor's business judgment, the Debtor believes that the proposed sale under the Sale Agreement is fair, reasonable, and will maximize the value of the Property, and produce a good-faith purchaser. *Id* at ¶ 12. The Debtor's opinion is based on several factors, including but not limited to the following:

      a.    the length of time the Property has been marketed for sale;

      b.    the advice of C & W and those acting under its direction, who have experience in selling land similar to the Property;

      c.    the arm's-length nature of the negotiations related to the terms of the Sale Agreement;;

      d.    the relatively quick closing of the sale; and

      e.    the ability of the Debtor to accept higher and/or better offers for Lot 44.

*Id*.

### *Notice of the Proposed Sale and Higher and/or Better Offers*

32. Adequate and reasonable notice of this Motion and the proposed public sale of Lot 14 will be made to interested parties.

33. Concurrent with the filing of this Motion, the Debtor will serve a Notice of Hearing upon all creditors and parties-in-interest in the above-captioned bankruptcy case and all parties whose interests might be affected by the sale contemplated herein. The Notice of Hearing provides: (a) a general description of Lot 44; (b) the price that is offered by the Buyer; (c) a statement that the Debtor will accept higher and/or better offers for Lot 44, as well as the

procedures for submitting a higher and/or better offer prior to the expiration of the Higher and/or Better Deadline; (d) procedures and the deadline for objecting to the sale of Lot 44; and (e) the date and time of any hearing on this Motion.

34. C & W will provide notice of the proposed sale to any parties who have expressed an interest in Lot 44.

35. C & W will continue to market Lot 44 for sale through the Higher and/or Better Deadline, and the Debtor will consider competing offers for Lot 44 prior to the expiration of the Higher and/or Better Deadline. Stevens Declaration ¶ 13.

36. Whether an offer is higher and/or better will be determined by the Debtor in its sole and absolute discretion, and to the extent the Debtor receives a competing offer for Lot 44 prior to the Higher and/or Better Deadline that it considers higher and/or better, the Debtor will provide notice to the Buyer of the higher and/or better offer.

37. Such procedures are fair, reasonable, and are intended to obtain the highest and best price for Lot 14 as well as afford notice as required under 11 U.S.C. § 363 and Federal Rules of Bankruptcy Procedure 2002 and 6004.

### *Fair and Reasonable Price*

38. For the reasons set forth above, as well as the fact that the Debtor can accept higher and/or better offers for Lot 44 prior to the expiration of the Higher and/or Better Deadline, the Debtor respectfully submits the proposed sale price for Lot 44 is fair and reasonable.

### *Good Faith Purchaser*

39. The parties' negotiation of the Sale Agreement has been at arms' length and in good faith, and the parties agree that all acts culminating in the closing of the Sale Agreement will

likewise be negotiated and conducted through arms' length transactions and in good faith. Parry Declaration ¶ 7.

40. Although the Bankruptcy Code does not define "good faith," the Tenth Circuit has determined in the context of 11 U.S.C. § 363(m) that a "good faith" purchaser is "one that buys in good faith, and for value." Actions that destroy a purchaser's good faith include "fraud, collusion between the purchaser and other bidders or trustee, or an attempt to take grossly unfair advantage of other bidders."

41. Here, the good faith standard has been met because the Buyer is purchasing the Property in good faith and for fair value as part of a transparent process that affords all parties in interest and potential purchasers the opportunity to make a higher and/or better offer for the purchase of the Property. Additionally, the Buyer is an independent third party that has no connections to the Debtor, and there has been no fraud or collusion between the Buyer and Debtor. Stevens Declaration ¶ 14.

42. Specifically, Lot 44 has been actively marketed for more than eight years. Stevens Declaration ¶ 5. The parties entered into good-faith negotiations relating to the terms of the Sale Agreement. Stevens Declaration ¶ 14. As a result of such negotiations, as well as other factors discussed above, the purchase price represents a fair and reasonable value for Lot 44. Finally, the material terms of the sale are being fully disclosed to the Court and parties in interest, and to the extent any party submits a higher and/or better offer for Lot 44 prior to the expiration of the Higher and/or Better Deadline, the Debtor is able to accept such offer. Accordingly, the Debtor submits that the proposed sale is an arm's length transaction made to a good faith purchaser and requests that any order authorizing this sale so provide.

43. Accordingly, the Debtor requests that the Court enter an Order granting this Motion and (a) approving the sale under 11 U.S.C. § 363(b) and (m).

*The Sale of Lot 14 Free and Clear Pursuant to 11 U.S.C. §363 (f) is Warrented*

44. 11 U.S.C. § 363(f) states that a Debtor may sell estate property free and clear of interests, if:

    f. applicable non-bankruptcy law permits the sale of such property free and clear of such interest;

    g. such entity consents;

    h. such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

    i. such interest is in bona fide dispute; or

    j. such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

45. Because Section 363(f) is in the disjunctive, the satisfaction of any one of the alternative requirements enumerated therein will warrant the Debtor's proposed sale of the Property free and clear of interests.

46. The Recorded Liens equal an amount greater than the sales price of the Property. However, as set forth above, each of the Recorded Liens is either invalid or in bona fide dispute, or the holder has agreed to this Motion subject to the treatment stated herein, including the payment to PIB from the proceeds of Lot 44 closing. Accordingly, it is appropriate for the Court to approve the Sale, free and clear of all liens, claims and encumbrances, including but not limited to the Recorded Liens, without the liens attaching to the Sale proceeds. In this manner, the Debtor would pay PIB and the costs of sale, including property taxes.

47. Cause exists to waive the 14-day period set forth in Rule 6004(h) because the Debtor needs to comply with the Sales Agreement and time is of the essence.

*The Debtor Should be Authorized to Make Payments*

48. The Debtor is requesting authority to pay the costs of sale, including the sales commission and taxes. Based on all of the statements above, the Debtor submits that he should be authorized to do so.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court enter an Order granting the Motion, and:

A. Approving the Sale Agreement;

B. Authorizing the sale of Lot 44 to the Buyer or to the person whose higher and/or better offer is accepted by the Debtor free and clear of all interests pursuant to 1 1 U.S.C. 363(b) and (f);

C. Finding that the sale of Lot 44 is a good faith sale under 11 U.S.C. § 363(m);

D. Authorizing the Debtor to pay from the gross sale proceeds the costs of sale, including a 6% commission, outstanding real property taxes, and payment to PIB;

E. Authorize the Break-Up Fee to the Buyer;

F. Authorize the waiver of the 14-day appeal period; and

G. Such other relief as the Court deems just and appropriate.

Dated April 23, 2018.

    /s/ Darren Neilson

Darren Neilson
*Proposed counsel for Fairgrounds Properties, Inc.*

# CERTIFICATE OF SERVICE

The undersigned hereby certified that on this 7th day of February, 201817-, a true and correct copy of the foregoing **MOTION SEEKING AUTHORITY TO SELL REAL PROPERTY LOCATED IN HURRICANE, UTAH FREE AND CLEAR OF ALL INTERESTS PURSUANT TO 11 U.S.C. § 363, AND TO PAY TAXES AND COSTS OF SALE FROM SALE PROCEEDS** was electronically filed with the United States Bankruptcy Court for the District of Utah CM/ECF filing system and further certifies that the below listed are parties of record in this case, are registered users of CM/ECF, and will be served through the CM/ECF system:

- Justin D. Heideman  jheideman@heidlaw.com, wpoulsen@heidlaw.com; sstelmasek@heidlaw.com
- Peter J. Kuhn tr Peter.J.Kuhn@usdoj.gov, James.Gee@usdoj.gov; Lindsey.Huston@usdoj.gov; Suzanne.Verhaal@usdoj.gov
- Brian M. Rothschild brothschild@parsonsbehle.com, ecf@parsonsbehle.com
- United States Trustee USTPRegion19.SK.ECF@usdoj.gov
- Adelaide Maudsley: amaudsley@kmclaw.com;

**Mail Service** – By regular first class United States mail, postage fully prepaid, addressed to the following parties:

Dakota Aggregate, LLC
920 S. 920 W.
Hurricane, UT 84737-2507

Dakota Aggregate, LLC
c/o Brad Last
1194 S 180 W
Hurricane, UT 84737

Washington County Treasurer
197 East Tabernacle
St George, UT 84770-3443

SAVAGE ESPLIN RADMALL PC
20 NORTH MAIN SUITE 402
SAINT GEORGE UT 84770

BRETT JOHN
2519 W 1930 NORTH CIR
SAINT GEORGE UT 84770

　　　　　　　　　　　　　　　　　　/s/ Darren Neilson

# EXHIBIT 1

Darren B. Neilson, USB #15005
**The Neilson Law Group**
2150 South 1300 East, Suite 360
Salt Lake City, UT 84106
Telephone:	801.207.9500
Facsimile:	801.212.2058
Email:		darren@neilsonlaw.co

*Proposed Attorneys for Debtor Fairgrounds Properties, Inc.*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| In re<br><br>FAIRGROUNDS PROPERTIES, INC.<br><br>Debtor. | Bankruptcy No. 17-29271<br><br>Chapter 11<br><br>Judge William T. Thurman |
|---|---|

**DECLARATION OF ROBERT STEVENS IN SUPPORT OF MOTION SEEKING AUTHORITY TO SELL REAL PROPERTY LOCATED IN HURRICANE, UTAH FREE AND CLEAR OF ALL INTERESTS PURSUANT TO 11 U.S.C. § 363, AND TO PAY TAXES AND COSTS OF SALE FROM SALE PROCEEDS**

I, Robert Stevens, being of lawful age, declare, certify, verify, and state as follows:

1. I am the president and sole owner of Fairgrounds Properties, Inc. ("**Fairgrounds**" or "**Debtor**").

2. I submit this Declaration in support of the Motion Seeking Authority to Sell Real Property Located in Hurricane, Utah Free and Clear of All Interests Pursuant to 11 U.S.C. § 363, and to Pay Taxes and Costs of Sale From Sale Proceeds (the "**Motion**").

3. I make all of the following statements based on my personal knowledge.

4.      In 2007, I, acting as the principal for the Debtor purchased eighty-six (86) acres of real property located in Hurricane, Utah (the "**Property**").  Thereafter the Property was developed into industrial lots and then marketed and sold them for further construction and development by purchasers (the "**Fairgrounds Lots**").  Though various sales over the years, as of the petition date, the Debtor is left with approximately thirty-one (31) acres, which have been divided up into nineteen (19) lots.  The Debtor has completed the entire infrastructure of remaining land including; completion of gutters, paved entries and water/sewer.

5.      The Property, including Lot 44, has been marketed for private sale since 2008. Originally the Property was listed by N.A.I. but the Debtor entered into a new listing agreement with Cushman & Wakefield ("**C & W**") on April 01, 2014.  I have been working with C & W and am familiar with the work they have done to market the Property.  C & W has marketed the Property for private sale pursuant to a listing agreement from April 1, 2014.  A title report for Lot 44 is attached hereto as Exhibit "A."

6.      The Property has been actively marketed for private sale including by: (a) creating marketing flyers and postcards; (b) HTML email broadcasts; (c) posting on national real estate website; (d) launching campaigns to real estate brokers and national home builders; (e) engaging the regional economic development community; (t) soliciting targeted category buyers; and (g) otherwise promoting the Property's availability to the national marketplace.

7.      On April 09, 2018, John Hasshaw or Assigns ("**Buyer**") presented an Real Estate Purchase Contract for Land ("Agreement") for the purchase of Lot 44 for a purchase price of $115,000.  A true and correct copy of the Sale Agreement is attached hereto as Exhibit "B."  On or about April 13, 2018, I presented a counteroffer to Buyer in which the Debtor offered Lot 44 for a purchase price of $125,000, as well as requesting forty-five (45) days for closing to allow

the Debtor to obtain Bankruptcy court approval of the sale, which the Buyer accepted. See Exhibit "B."

8. Following close of the sale of Lot 44, the Debtor anticipates paying from the gross proceeds of the sale the costs of sale, which will include a 6% commission to C & W as set forth in the Listing Agreement.

9. There are outstanding property taxes on Lot 44, and I anticipate paying the property taxes out of the gross sale proceeds.

10. Notice of this Motion will be served on all parties in interest in this case.

11. The Debtor is a real estate developer and I have over thirty (30) years of experience and expertise in real estate sales.

12. I believe that the proposed sale under the Sale Agreement is fair, reasonable, and will maximize the value of the Lot 44, and produce a good-faith purchaser. My opinion is based on several factors, including but not limited to the following:

    a. the length of time the Property has been marketed for sale;

    b. the advice of C & W and those acting under its direction, who have experience in selling land similar to the Property;

    c. the arm's-length nature of the negotiations related to the terms of the Sale Agreement;

    d. the relatively quick closing of the sale; and

    e. the ability of the Debtor to accept higher and/or better offers for Lot 44.

13. C & W will continue to market Lot 44 for sale through the Higher and/or Better Deadline, and the Debtor will consider competing offers for Lot 44 prior to the expiration of the Higher and/or Better Deadline.

14.    Buyer is an independent third party that has no connections to the Debtor, and there has been no fraud or collusion between the Buyer and Debtor

15.    The Debtor incurred the obligation to Dakota Aggregate, LLC in February of 2014. At the time the two principals of the Debtor were myself and my son-in-law, Brett John. Dakota Aggregate, LLC had obtained a judgment against Mr. John personally based on a previous business venture between Dakota Aggregate, LLC and Mr. John. In satisfaction of the judgment against Mr. John, Dakota Aggregate, LLC was allowed to record a lien against the Property. The Debtor did not any value in consideration for the transfer. At the time of the transfer, the Debtor was operating as a debtor-in-possession under a confirmed plan of reorganization and was insolvent.

DATED this 24th of April 2018.

_____
Robert Stevens

# EXHIBIT A

# EXHIBIT B